UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PETER ALAN BARTLETT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 19-cv-11767-ADB |
| ANDREW M. SAUL, | * | |
| *Commissioner of the Social Security* | * | |
| *Administration*, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER ON MOTIONS TO REVERSE AND AFFIRM**

BURROUGHS, D.J.

Plaintiff Peter Alan Bartlett ("Claimant") brings this action pursuant to section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. [ECF No. 1]. Currently pending before the Court are Claimant's motion to reverse the Commissioner's decision denying his disability benefits, [ECF No. 14], and the Commissioner's cross-motion for an order affirming the decision, [ECF No. 19]. For the reasons set forth below, the Court finds that the Administrative Law Judge's decision was supported by substantial evidence and was not contrary to law and therefore Claimant's motion to reverse or remand, [ECF No. 14], is <u>DENIED</u> and the Commissioner's motion to affirm, [ECF No. 19], is <u>GRANTED</u>.

# I.   BACKGROUND

## A.   Statutory and Regulatory Framework: Five-Step Process to Evaluate Disability Claims

"The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income program, which provides assistance for the indigent aged and disabled." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

The Act provides that an individual shall be considered "disabled" if he or she is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A).  The disability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy.  See 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

When evaluating a disability claim under the Act, the Commissioner uses a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination may be concluded at any step along the process.  The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

**B.    Procedural Background**

Claimant filed his application for SSI and SSDI benefits on September 30, 2016.

[R. 15].[1]  He alleged that he became disabled on September 9, 2016 due to chronic obstructive

pulmonary disorder ("COPD"), depressive and anxiety disorders, attention deficit disorder

("ADD"), and post-traumatic stress disorder ("PTSD").  [R. 18].  The Claimant initially claimed

an inability to function and/or work as of January 1, 2014, but later amended his onset date to

September 9, 2016.  [R. 115, 292].  His date last insured was June 30, 2017.  [R. 18].

The Social Security Administration (the "SSA") denied Claimant's applications for SSI

and SSDI benefits on November 28, 2016, and again upon reconsideration on April 4, 2017.

[R. 15].  Thereafter, Claimant requested an administrative hearing and a hearing took place

before Administrative Law Judge ("ALJ") Sean Teehan on July 24, 2018.  [Id.].  Claimant, who

was represented by non-attorney representative Catherine Willard, appeared and testified at the

hearing.  [R. 41–96].  On September 6, 2018, the ALJ issued a decision finding that Claimant

was not disabled.  [R. 15, 30].  The SSA Appeals Council denied Claimant's Request for Review

on June 19, 2019.  [R. 1].  On August 16, 2019, Claimant filed a timely complaint with this

Court, seeking review of the Commissioner's decision pursuant to section 205(g) of the Act.

[ECF No. 1].

**C.    Factual Background**

Claimant was fifty-one years old on September 9, 2016, the alleged date of onset.

[R. 28].  Claimant has a limited education.  [Id.].  In 2002 and 2003, he worked as an Assistant

---

[1]  References to pages in the Administrative Record, which was filed electronically at ECF No.
12, are cited as "[R. __ ]."

Manager at a Home Depot, earning a salary of $42,000 per year, and from 2007–2009, he worked as a Sales Associate at a Walmart earning between $25,000 and $28,000 per year. [R. 51, 55, 286–87, 322].  After 2013, Claimant's annual wages declined and he eventually became homeless.  [ECF No. 15 at 3].  He began living at Lifebridge Shelter in Salem, Massachusetts on September 1, 2016.  [R. 796].  Although the alleged onset date of disability is September 9, 2016, Claimant testified that he worked at the docks in Gloucester, Massachusetts five to six days over the course of three weeks in 2017 but was unable to perform the job as required due to his COPD.  [R. 18, 48].  In addition, medical records document Claimant's reports of working part time in January, February, and August 2017.  [R. 845, 870, 900].

### D.   Relevant Medical Evidence

#### 1.   Chronic Obstructive Pulmonary Disorder

Claimant has a history of COPD that he has managed by using inhalers; since at least November 2016, he has been prescribed Symbicort for daily use and Combivent as needed. [R. 23, 58, 775].  In November 2016, consultative examining doctor Yakov Kogan, M.D., noted that Claimant alleged COPD and difficulty walking, but a physical examination showed normal respiratory function and gait.  [R. 23, 777].  Claimant made a few isolated visits to the emergency room in 2017 for COPD exacerbation with difficulty breathing, and during those visits he told his treating physicians that he smoked a pack of cigarettes per day.  [R. 23, 786, 925, 933, 978].  During a visit to his primary care provider, Dr. Damian Archer, in November 2017, Claimant reported some shortness of breath, wheezing, and congestion.  [R. 23, 1031].  He was diagnosed with bronchitis and, in response to his report of smoking a pack a day, was advised to quit given the "prognosis of smoking in the presence of COPD . . . ."  [R. 23, 1029, 1031].  In addition to his smoking, medical records indicate a remote history of substance abuse.

4

See, e.g., [R. 19, 1011–13].  Dr. Kogan determined that Claimant's COPD resulted in only mild limitations in his exertional work-related activities.  [R. 25, 777].

### 2.  Mental Health Conditions

Claimant has a history of mental health treatment dating back to 2014.  [R. 25].  During a consultative evaluation on October 25, 2016, Ginette Langer, Ph.D., determined that Claimant has four medically determinable impairments: anxiety disorders, COPD, affective disorders, and substance addiction disorders.  [R. 119].  His mental health conditions have been managed with prescriptions of Trazodone and Proxetine.  [R. 775, 801].  In December 2017, Dr. Archer listed Claimant's mental health diagnoses as including PTSD, panic disorder, major depressive disorder, and opioid use disorder.  [R. 1140].

During an October 2016 appointment with Samantha Spagnuolo, Claimant's therapist, Claimant reported symptoms including depression and flashbacks, although a mental status examination showed him to be cooperative with intact thought process, memory, and judgment. [R. 380–82].  In January 2017, Dr. Archer and Ms. Spagnuolo co-signed a form requested by Disability Determination Services ("DDS"), in which they recorded Claimant's reports that he preferred to spend his time alone, but also noted that he was friendly with peers.  [R. 27, 799–801].  Claimant also reported that he needed to have instructions written down due to issues with his memory.  [R. 27, 799–801].  In December 2017, Dr. Archer noted Claimant's homelessness, inability to sustain concentration and attention to allow for the timely completion of tasks, avoidance of public places, and extreme difficulty adapting and coping with unexpected changes to environment or routine.  [R. 1140–45].  In another mental health form completed at the request of UMass Medical's Disability Evaluation Services in February 2018, Dr. Archer and Ms. Spagnuolo noted that Claimant reported having difficulty concentrating and a poor memory,

but also said that Claimant's mental status at the time demonstrated that his concentration and memory were intact and that his thought processes were normal. [R. 1330, 1333]. After performing a neuropsychological evaluation of Claimant on February 27, 2018, Wayne Van Orman, Ed.D., reported that he found Claimant to be suffering from stress and tension, and showing signs of insecurity, anxiety, and depression. [R. 1325–27]. Although Dr. Orman stated that Claimant lost his train of thought at times and required repetition of directions, he was otherwise observed to have "appropriate levels of attention, activity, and focus" during testing, [R. 1322–23], and his testing scores revealed average memory, and cognitive abilities in the low average to average range, [R. 1327].

### E.      Hearing

On July 24, 2018, a hearing was held before the ALJ. [R. 15, 36]. Appearances at the hearing were made by Claimant, his non-attorney representative, Catherine Willard, and Vocational Expert Frank. A Lindner. [R. 15]. Claimant's testimony was consistent with prior statements made to his treating providers as described supra, Section I.D.

Lindner was asked about the kind of work, if any, an individual could perform if that person had Claimant's work experience and residual functional capacity ("RFC"), and taking into account Claimant's age, education, training, and work experience. [R. 29, 86]. Lindner stated that such an individual would be unable to perform the past work described, which was medium/heavy work, but that he or she could perform light work. [R. 28, 86]. Further, Lindner said that there was a significant number of jobs in the national economy that such an individual could perform. [R. 28, 86]. When asked about these jobs, Lindner named three—folding-machine operator, stock checker, and collator—that involved light, unskilled work. [R. 29, 86]. The ALJ asked Lindner whether these jobs would expose an individual to irritants and

temperature extremes that could potentially exacerbate COPD, and Lindner testified that the jobs

he identified would not regularly expose an individual to these risks.  [R. 29, 91–92].

### F.     The ALJ'S Decision

On September 6, 2018, the ALJ issued a decision finding that Claimant was not disabled

under Section 1614 (a)(3)(A) of the Act.  [R. 30].  Applying the five-step sequential evaluation

process for determining whether an individual is disabled, at step one the ALJ determined that

Claimant had not engaged in substantial gainful activity since September 9, 2016, the alleged

onset date.  [R. 18].  At step two, the ALJ determined that Claimant has the following "severe"

impairments: COPD, depressive and anxiety disorders, ADD, and PTSD.  [Id.].  At step three,

the ALJ determined that Claimant does not have an impairment or combination of impairments

that equals a listed impairment.  [R. 19].  Before considering step four of the sequential

evaluation process, the ALJ found the following with regard to Claimant's RFC:

> The [C]laimant has the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) and 416.967(b) lifting and carrying 20 pounds occasionally
> and 10 pounds frequently, sitting for 6 hours, and standing/walking for 6 hours
> except he: can occasionally climb stairs and ramps, but must avoid climbing
> ladders/ropes/scaffolds.   He must avoid concentrated exposure to temperature
> extremes, humidity, and pulmonary irritants such as dust, fumes, odors, and gases.
> He can understand and carry out instructions for simple routine tasks which would
> also be consistent with work performed at the Specific Vocational Preparation of 2
> (SVP2) and can maintain concentration/persistence/pace in the performance of
> these tasks for 2-hour periods over the course of an 8-hour workday/40-hour
> workweek.  He can interact with supervisors, coworkers, and the general public on
> a superficial interactional basis.  He can deal with minor workplace changes.

[R. 22].

At step four, the ALJ determined that Claimant was unable to perform any past relevant

work as his former jobs involved medium/heavy work.  [R. 28].  At step five, the ALJ found that,

"considering the [C]laimant's age, education, work experience, and residual functional capacity,

the [C]laimant is capable of making a successful adjustment to other work that exists in

significant numbers in the national economy."  [R. 29].  The ALJ therefore found that Claimant was not disabled under the Act.  [R. 29–30].

## II.  STANDARD OF REVIEW

This Court has jurisdiction pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g).  Section 205(g) provides that an individual may obtain judicial review of a final decision of the Commissioner of Social Security by instituting a civil action in federal district court.  See 42 U.S.C. § 405(g).  The district court may take a number of actions with respect to the Commissioner's decision.  First, under sentence four of section 205(g), the court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  Id.  A court's decision under sentence four, however, can be based only on a review of the administrative record of proceedings before the Commissioner.  See Whitzell v. Astrue, 792 F. Supp. 2d 143, 147 (D. Mass. 2011) (citing 42 U.S.C. § 405(g)).  If a claimant presents new evidence to the court that was not contained within the administrative record, the court may not consider it.  "If additional evidence is to be considered, it must be by way of remand[]" pursuant to sentence six of Section 205(g).  Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1503 (10th Cir. 1992) (Kane, J., concurring).  Sentence six permits the court to remand a case to the Commissioner for further proceedings and order the evidence to be added to the record for consideration.  See 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

Under section 205(g), sentence four, this Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). In conducting such review, the Court must defer to the Commissioner's factual findings, so long as such findings are "supported by substantial evidence," but the Court's review of the Commissioner's conclusions of law is *de novo*. Id.; see also Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence . . . but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.").

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (internal quotation marks and citations omitted). The Court "must affirm the [Commissioner's] resolution, *even if the record arguably could justify a different conclusion*, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (emphasis added) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)).

## III.   DISCUSSION

Claimant asserts that the ALJ's determination should be reversed for four reasons: (1) the ALJ failed to apply the "treating physician rule"; (2) the ALJ did not follow SSA regulations when weighing the opinion of a non-medical treating source; (3) the ALJ mischaracterized information in the record about Claimant's work activities and improperly relied on Claimant's

activities of daily living ("ADL") in reaching his RFC determination; and (4) the ALJ improperly substituted his own opinion of Claimant's mental RFC despite the evidence in the record. [ECF No. 15 at 7–15]. The Commissioner contends that the ALJ's decision should be affirmed because he correctly applied the law and the decision was supported by substantial evidence. See generally [ECF No. 20]. As explained below, the Court finds that Claimant's stated grounds for reversal are without merit, and therefore affirms the ALJ's decision.

### A.      The ALJ Properly Evaluated Treating Source Opinions

Claimant first asserts that the ALJ violated the "treating physician rule" by giving too little evidentiary weight to the opinions of Claimant's physician, Dr. Archer, and his therapist, Ms. Spagnuolo, [ECF No. 15 at 8–9], and that in so doing the ALJ improperly substituted his own judgment for the opinions of medical experts, [id. at 9]. Claimant further asserts that the ALJ did not properly weigh the factors articulated in 20 C.F.R. § 404.1527(c)(2) when determining that Dr. Archer's and Ms. Spagnuolo's opinions should not be given controlling weight. [Id. at 9]. The Commissioner contends that the ALJ sufficiently supported his determination that their opinions deserved less weight. [ECF No. 20 at 11–12].

For claims filed prior to March 27, 2017, the treating physician rule, codified at 20 C.F.R. § 404.1527, states that, "[g]enerally, [the agency] will give more weight to the medical opinion of a source who has examined [a patient] than to the medical opinion of a medical source who has not examined [the patient]." 20 C.F.R. § 404.1527(c)(1). This deference to the opinion of treating sources, however, is not absolute. Coggon v. Barnhart, 354 F. Supp. 2d 40, 52 (D. Mass. 2005). Controlling weight is granted unless the ALJ finds that a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or that it is "inconsistent with other 'substantial' evidence in the record." Deblois v. Astrue, No.

07-cv-11685, 2008 U.S. Dist. LEXIS 51843, at *16 (D. Mass. June 13, 2008) (quoting 20 C.F.R.

§ 404.1527(c)(2)).  Even if the opinion of a treating source is found to conflict only with the

opinions of non-treating sources, the ALJ may still reject the treating source's opinion as

controlling.  Coggon, 354 F. Supp. 2d at 54.  When an ALJ is determining whether a treating

source's opinion should be given controlling weight, the opinion "must be weighed using all of

the factors provided in 20 C.F.R. 404.1527 and 416.927."  Id. at 52 (quoting Titles II and XVI:

Giving Controlling Weight to Treating Source Medical Opinions, 61 Fed. Reg. 34490, 34491

(July 2, 1996)).  These factors include:

> (1) the examining relationship, (2) the treatment relationship, including the length,
> nature, and extent of treatment and the frequency of examination; (3) supportability
> of the opinion by evidence; (4) consistency with the record; (5) the specialization
> of the treating source, and (6) any other factors which support or contradict the
> opinion.

Id. (quoting 20 C.F.R. § 416.927(d)); see also 20 C.F.R. § 404.1527 (listing same factors).

Regulations require an ALJ to "provide 'good reason' for the weight afforded to the

opinions of treating sources."  Deblois, 2008 U.S. Dist. LEXIS 51843, at *17 (quoting 20 C.F.R.

§ 404.1527(c)(2)).  The First Circuit has held, however, that an ALJ is not required to "expressly

address each of the factors provided in § 404.1527(c)(2)" in explaining how much weight he or

she affords the opinion of a treating source.  McNelley v. Colvin, No. 15-cv-01871, 2016 U.S.

App. LEXIS 10155, at *3–4 (1st Cir. Apr. 28, 2016) ("The ALJ also did not err by failing to

expressly address each of the factors provided in § 404.1527(c)(2) in discussing [the treating

source's] medical opinions. . . .  He was not required to expressly mention each factor."); see

Pelletier v. Astrue, No. 09-cv-10098, 2012 U.S. Dist. LEXIS 34713, at *11 (D. Mass. Mar. 15,

2012) ("Good reasons can be provided by discussing just one [20 CFR § 404.1527(c)] factor.").

Here, the ALJ properly identified records and opinions from Claimant's treating sources,

thereby evidencing that he had at least some knowledge of the treating and examining history.

Further, the ALJ referenced supportability, another of the required factors, when discussing the January 2017 and February 2018 opinions from Dr. Archer and Ms. Spagnuolo.  [R. 27]; see 20 C.F.R. § 404.1527(c)(3) (identifying "[s]upportability" as a factor); 20 C.F.R. § 416.927(d) (same).  The ALJ stated that these two opinions were unsupported, subjective reports based on Claimant's own reported symptoms, rather than his treating providers' objective findings.  [R. 27 ("Although from a treating doctor, they specifically indicate that they are based on claimant reports, as opposed to indicating any supporting objective findings.")]; see [R. 1333 ("Patient reports poor memory . . . ."); R. 800 ("Patient reports growing anxious . . . .")].  Where a treating source's opinions on disability status are based on a claimant's subjective description of his or her symptoms, an ALJ may decline to give those opinions controlling weight.  Guziewicz v. Astrue, No. 10-cv-00310, 2011 U.S. Dist. LEXIS 5370, at *19 (D.N.H. Jan. 14, 2011) ("[T]he mere memorialization of a claimant's subjective complaints in a medical report does not elevate those statements to a medical opinion." (quoting Morris v. Barnhart, 78 Fed. App'x 820, 824 (3d Cir. 2003))); Deblois, 2008 U.S. Dist. LEXIS 51843, at *20 ("The ALJ. . . afforded less probative weight to the opinions and functional assessments of both [claimant's physicians] regarding their evaluations that [claimant] is unfit for employment because th[o]se assessments seem to be based on the claimant's subjective complaints alone." (internal quotation marks omitted)).

The ALJ then turned to consistency with the record, another of the factors to be considering when weighing the opinion of a treating source, and identified several inconsistencies between the record and the opinions of Dr. Archer and Ms. Spagnuolo (including Dr. Archer's own findings).  [R. 27]; see 20 C.F.R. § 404.1527(c)(4) (identifying "[c]onsistency" as a factor); 20 C.F.R. § 416.927(c))(4) (same).  As an example, the ALJ said that Dr. Archer's

statement in December 2017 that Claimant had "minimal ability in memory" and an "inability to sustain concentration" conflicted with the opinions of Claimant's other treatment providers, who observed Claimant to be "alert, oriented, and coherent . . . with intact thought process, intact cognition and memory, and intact judgment."  [R. 27]; see [R. 380–82, 1330, 1333 (medical records supporting ALJ's finding)].  Similarly, the ALJ pointed to forms completed by Dr. Archer and Ms. Spagnuolo in January 2017 and February 2018, in which Dr. Archer and Ms. Spagnuolo recorded "patient reported deficits in social functioning, memory, [and] concentration" that the ALJ found to be "inconsistent with findings from this source as well as other sources showing repeated findings that the claimant was well groomed, cooperative, alert, oriented, and coherent with intact thought process, intact cognition and memory, and intact judgement."  [R. 27].

Claimant argues that Dr. Archer's and Ms. Spagnuolo's assessments were consistent with and supported by the results of a neuropsychological examination performed by Dr. Orman, and that the ALJ ignored these test results.  [ECF No. 15 at 9–10].  The ALJ did not ignore these results, but rather found them inconsistent with other evidence in the record, including the opinions of Dr. Archer and Ms. Spagnuolo.  [R. 26].  Specifically, the ALJ noted that while Dr. Orman observed Claimant to "lose his train of thought at times" and to "require[] repetition of directions," his cognition testing results were "in the low average to average ranges."  [Id.]; see [R. 1327].  The ALJ did not ignore evidence or substitute his own opinion for medical opinions, but rather weighed the evidence provided in Dr. Orman's report alongside other evidence in the record to reach his determination.

Because the ALJ specifically addressed at least two of the factors from 20 C.F.R. § 404.1527(c)(2)—supportability of the opinion by other evidence and consistency with the

record—he was not required to further detail his analysis or reasons for according the opinions of

Dr. Archer and Ms. Spagnuolo less weight.  <u>McNelley</u>, 2016 U.S. App. LEXIS 10155, at *3–4.

His analysis of the relevant evidence, including the treating sources' opinions, set forth "good

reason" for rejecting those opinions.  <u>See</u> 20 C.F.R. § 404.1527(c)(2); <u>Deblois</u>, 2008 U.S. Dist.

LEXIS 51843, at *20 (affirming the ALJ's finding that a treating source's opinion having been

based on the claimant's subjective statements was alone a "good reason" for affording that

opinion less weight); <u>see</u> <u>Coggon</u>, 354 F. Supp. 2d at 56 (affirming the ALJ's decision to give

little weight to a treating physician's opinion where that opinion was determined to be an

"advocacy opinion" and inconsistent with other opinions on the record).  The ALJ's findings as

to the opinions of Dr. Archer and Ms. Spagnuolo were supported by substantial evidence and are

entitled to deference.  <u>See</u> <u>Biestek</u>, 139 S. Ct. at 1154, 1157.

### B.      The ALJ Properly Evaluated Non-Medical Source Opinions

Claimant next contends that the ALJ erred in rejecting a report authored by Irene

Walcott, a licensed clinical social worker who is the Director of Case Management and

Behavioral Services at the shelter where Claimant resides.  [ECF No. 15 at 10].  Claimant alleges

that the ALJ failed to appropriately weigh Ms. Walcott's report because his decision mistakenly

suggested that Ms. Walcott's report was written by a different provider.  [<u>Id.</u>].  The

Commissioner argues that the ALJ gave Ms. Walcott's report appropriate weight because she

was not an "acceptable medical source," and that even if the ALJ did confuse the source of her

report, he still considered its substance.  [ECF No. 20 at 15–16].

"[O]nly 'acceptable medical sources' can give [the agency] medical opinions," and

information provided by these sources is ordinarily entitled to controlling weight.  SSR No.

14

06-03p, 2006 SSR LEXIS 5, at *4 (Aug. 9, 2006) (citing 20 C.F.R. § 404.1527(a)).[2]   The ALJ

may nonetheless consider evidence from "other sources" that are not "acceptable medical

sources," including opinions provided by clinical social workers like Ms. Walcott.  Id.; Simumba

v. Colvin, No. 12-cv-30180, 2014 U.S. Dist. LEXIS 34613, at *25 (D. Mass. Mar. 17, 2014)

(stating that "'other sources' include non-physician medical sources, such as . . . private and

public social workers" (citing 20 C.F.R. § 404.1513(d)).  "[I]nformation from such 'other

sources' may be based on special knowledge of the individual and may provide insight into the

severity of the impairment(s) and how it affects the individual's ability to function."  SSR No.

06-03p, 2006 SSR LEXIS 5, at *5.  When considering opinions from other sources, "[t]he ALJ is

not required to apply the factors listed in 20 C.F.R. § 416.927(c)(1)–(6) . . . nor to list 'good

reasons' for the weight afforded to these other sources" but must nonetheless "'adequately

explain [his] treatment of the opinion so that a reviewer can determine if the decision is

supported by substantial evidence.'"  Simumba, 2014 U.S. Dist. LEXIS 34613, at *25 (quoting

Taylor v. Astrue, 899 F. Supp. 2d 83, 88–89 (D. Mass. 2012)).

     Although the ALJ is not required to apply the factors listed in 20 C.F.R.

§ 416.927(c)(1)–(6) or 20 C.F.R. § 416.927(d) when weighing the opinions of other sources,

Social Security Ruling ("SSR") No. 06-03p indicates that these factors may be used to evaluate

other sources, though "[n]ot every factor . . . will apply in every case."  SSR No. 06-03p, 2006

SSR LEXIS 5, at *10–12.  Importantly, the ALJ must discuss the weight afforded to these

opinions to a degree which "allows a claimant or subsequent reviewer to follow the adjudicator's

---

[2] Although Social Security Ruling ("SSR") No. 06-03p was rescinded as to all claims filed on or after March 27, 2017, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263 (Mar. 27, 2017), it remains in effect here, where Claimant filed his application for SSI and SSDI benefits on September 30, 2016, see [R. 15].

reasoning when [] such opinions may have an effect on the outcome of the case." Id. at *15–16;

Barowsky v. Colvin, No. 15-cv-30019, 2016 U.S. Dist. LEXIS 19118, at *21 (D. Mass. Feb. 17,

2016).  Ultimately, "the ALJ also ha[s] the discretion to conclude that the 'other source'

evidence [i]s not entitled to significant weight."  Barowsky, 2016 U.S. Dist. LEXIS 19118, at

*21.

       While Claimant makes note of the fact that the ALJ mistakenly suggested that Ms.

Walcott's report was written by Kristina Holmes, Claimant's shelter case manager who also

provided a letter in support of his claim, [ECF No. 15 at 10], this error is harmless as the ALJ

clearly considered Ms. Walcott's report in addition to Ms. Holmes's letter, and made explicit

reference to the contents of each.[3]  [R. 27–28 (referencing Ms. Walcott's report in noting that

"[t]his source opined that the [C]laimant's mental symptoms affect his judgement, concentration,

memory, and social functioning"); R. 1336 (Ms. Walcott's report, discussing these symptoms);

R. 25 (referencing Ms. Walcott's letter in noting that "this source observed the [C]laimant to get

winded and have to sit down and rest, for example when cleaning."); R. 1335 (Walcott's report,

discussing this observation); R. 25 (stating that Ms. Holmes's opinion that Claimant could not

work at all was given little weight); R. 796 (Ms. Holmes's letter, stating that, in her opinion,

Claimant is not capable of working)].

       The ALJ stated that the letter and report were considered, but ultimately afforded little

weight due to the fact they provided "generic statements not indicating specific functional

abilities" and "blanket statements of disability" made by sources that were not "acceptable

medical source[s]."  [R. 27–28, 25].  In addition, the ALJ noted that Walcott's statements about

---

[3] As neither Ms. Holmes nor Ms. Walcott is considered an "acceptable medical source," the ALJ
was entitled to weigh both opinions under the less exacting rubric provided for "other sources."
See SSR No. 06-03p, 2006 SSR LEXIS 5, at *5; 20 CFR § 404.1527(c).

Claimant's physical health were given little weight because she was not responsible for treating his physical conditions.  [R. 25].  These findings are supported by the record, which shows that Ms. Holmes's letter, which Claimant acknowledges was "brief and admittedly conclusory," [ECF No. 15 at 10], states merely that "I do not feel that [Claimant] is capable of working," [R. 796].  This statement goes to the ultimate question of disability, which is exclusively reserved for the ALJ, and was appropriately afforded little weight.  See 20 CFR § 404.1527(d)(1) ("[The ALJ is] responsible for making the determination or decision about whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  Further, consistent with the ALJ's statement about non-specific limitations, in her report Ms. Walcott stated that she had "observed the ways in which [Claimant's] mental health disability impacts his judgment, concentration, and ability to engage with [herself] and others," but she did not provide specific examples or descriptions of these limitations.  [R. 1336].

It was within the ALJ's discretion to attribute less weight to the opinions of these "other sources."  Barowsky, 2016 U.S. Dist. LEXIS 19118, at *21.  By identifying specific deficiencies in these opinions, the ALJ fulfilled his obligation to explain his evaluative process in a way which would "allow[] a claimant or subsequent reviewer to follow [his] reasoning."  Id.; see Taylor, 899 F. Supp. 2d at 88.  The Court finds that the ALJ's findings as to the opinions provided by Ms. Walcott and Ms. Holmes were supported by substantial evidence and are entitled to deference.  See Biestek, 139 S. Ct. at 1154, 1157.

### C.    The ALJ Properly Evaluated Evidence Regarding Claimant's Reported ADL and Work Activities

Claimant argues that the ALJ relied too heavily on instances of the Claimant's activities of daily living ("ADL") and work activity in making his determinations as to the severity of the

Claimant's restrictions, effectively ignoring other evidence in the record.  [ECF No. 15 at 13–14].  He contends that the activities which the ALJ mentioned were sporadic in nature and therefore do not give insight into his abilities to engage in work on a regular and continuous basis.  [Id. at 14; ECF No. 21 at 8].  The Commissioner responds that the ALJ did not erroneously rely on the Claimant's ADL and work history, as the ALJ reviewed those activities in reference to reports of medical experts and treatment providers.  [ECF No. 20 at 17, 13–14].

SSR 16-3p articulates a two-step process for evaluating a claimant's symptoms in a disability determination: after determining that the individual has a medically determinable impairment, the ALJ must then evaluate the "intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . ."  SSR 16-3p, 2016 SSR LEXIS 4, at *9 (Mar. 16, 2016).  In assessing the severity of an individual's symptoms, the ALJ must review the record and the claimant's activities of daily living.  Id. at *18; Coskery v. Berryhill, 892 F.3d 1, 7 (1st Cir. 2018).  Courts have routinely held that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all other forms of human and social activity."  Rohrberg v. Apfel, 26 F. Supp. 2d 303, 310 (D. Mass. 1998) (quoting Waters v. Bowen, 709 F. Supp. 278, 284 (D. Mass. 1989)).  Even so, while activities which are "sporadic" or "transitory" in nature will not necessitate a finding that a person is capable of work-related activities, evidence that the individual routinely engages in such activities may contribute to a finding that the individual's symptoms are not significantly limiting.  See Roeschlaub v. Astrue, No. 11-cv-10459, 2011 U.S. Dist. LEXIS 153939, at *21–22 (D. Mass. Dec. 5, 2011).

The ALJ explicitly followed this two-step process, referencing SSR 16-3p, in finding that Claimant had a medically determinable impairment.  [R. 23].  He then found that "[C]laimant's

statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," and went on to review and analyze that evidence thoroughly.  [Id.].

As to Claimant's physical impairments, the ALJ reviewed assessments by treatment providers as well as evidence that Claimant had engaged in daily physical activities such as walking and doing chores at the shelter.  [R. 24].  The ALJ noted Claimant's reported work history, including Claimant's reports to his treatment providers that he worked part time throughout 2017.  [R. 24, 26–27].  Claimant disputes the veracity of these work reports, arguing that an error in electronic medical records resulted in overreporting his work history.  [ECF No. 15 at 12].  A review of the records cited by the ALJ, however, indicates that Claimant consistently reported to his treatment providers that he was working throughout 2017, and that these reports are contained in contemporaneous notes of his visits.  [R. 845 (notes from January 23, 2017 session with Ms. Spagnuolo, discussing recent events in Claimant's life and stating that Claimant reported "working 3 days a week"); R. 900 (report of April 14, 2017 session with Ms. Spagnuolo, discussing recent events in Claimant's life and stating that Claimant reported that "he has been working about 3 days a week"); R. 870 (report from August 4, 2017 session with Ms. Spagnuolo, discussing recent events in Claimant's life and stating that Claimant reported that "he has been working, despite this being very difficult")].[4]  Having reviewed all of this evidence, the ALJ made the determination that Claimant's COPD was not so severe as to prevent him from doing work which required light physical exertion.  [R. 24–25.]

---

[4] Claimant appears to be referring to a recurring section in the notes from his treatment providers which includes the following notation: "Work/income: works on dock, very physical."  See, e.g., [R. 1304; R. 1319].  These notes are preceded by the following language: "Reviewed history from 12/31/2014 and no changes required."  See, e.g., [R. 1304; R. 1318].

The ALJ then analyzed Claimant's mental health conditions, reviewing Claimant's reported daily activities and work history alongside his treatment records.  [R. 25–26].  The ALJ noted that Claimant's treatment records repeatedly described Claimant's condition as "moderate" and indicated that he had intact memory, thought processes, and judgment.  [R. 26].  He also cited treatment records which indicated that Claimant "was observed to be well groomed, cooperative, alert, oriented, and coherent with intact thought processes, intact cognition and memory, and intact judgment."  [Id.].  The ALJ again addressed Claimant's ADL as being corroborative of his treatment providers' determinations that his conditions were moderate. [R. 26–27].  The ALJ cited Claimant's reported daily trips to the library and a coffee shop, daily chores at the shelter, and reading for an hour daily as indicating that Claimant's subjective allegations as to his deficits in memory and concentration were not supported by the record. [R. 26–27; R. 297 (referencing claimant's daily routine: "I will either go for a walk or go to the library"); R. 298 ("At the shelter I have to do chores such as cleaning [the] bathroom, sweeping [the] floor."); R. 299 (noting that "[claimant shops] at least 3-4 times a week" and is able to pay bills and count change); R. 300 ("I go to the library everyday [sic]."); R. 300 ("I read everyday [sic] for at least one hour.")].

Given the requirement that the ALJ consider ADL alongside other evidence, and in light of the evidence in the record, the ALJ did not err in considering Claimant's ADL and work history when making a determination as to his RFC.  See SSR 16-3p, 2016 SSR LEXIS 4, at *18. It was not unreasonable for the ALJ to infer, based on activities which Claimant reported to engage in frequently, that he is capable of engaging in light work, especially where the medical record substantially supported that inference.  See Coskery, 892 F.3d at 7 ("[The court] do[es] not see how it was unreasonable for the ALJ to infer, from what the record showed about

[Claimant's] ability to engage in these types of daily activities, that [Claimant] could perform light work."). The Court finds that the ALJ "used reports of daily activities combined with other evidence in the record to come to his conclusion about the [C]laimant's RFC, which is entirely consistent with the law." Newman v. Saul, No. 19-cv-11420, 2020 U.S. Dist. LEXIS 127299, at *44 (D. Mass. July 17, 2020). The ALJ's finding was supported by substantial evidence and was not in error. See Rodriguez Pagan, 819 F.2d at 3.

### D.      The ALJ Properly Assessed Claimant's RFC

As a final ground for remand or reversal, Claimant argues that by failing to properly weigh the opinions of medical sources and by evaluating Claimant's reported ADL, the ALJ substituted his own opinion and made an RFC determination without support on the record. [ECF No. 15 at 14]. The Court has already addressed these arguments, supra, Section III.A–C, and found them unavailing, and will therefore focus on Claimant's related contention that the ALJ improperly relied on the medical opinion of state agency psychologist Dr. Julie Cohen in determining Claimant's mental RFC. [ECF No. 15 at 14–15].[5] Claimant alleges that because Dr. Cohen did not have the benefit of evidence submitted after her opinion was written, she did not review the entire medical record and therefore the ALJ erred in relying on her opinion in making his RFC determination. [Id. at 14]. The Commissioner counters that because this new evidence showed no material deterioration in Claimant's condition, the ALJ did not err in considering Dr. Cohen's opinion when making his RFC determination. [ECF No. 20 at 19].

---

[5] In his memorandum in support of the motion to reverse, Claimant refers to "state agency opinions" generally, but focuses on the ALJ's findings regarding Claimant's mental RFC. See [ECF No. 15 at 14–15]. As Dr. Cohen provided the state agency opinion as to Claimant's mental RFC, the Court focuses on her opinion.

"[M]edical evidence too far removed from the relevant time period may not be utilized to serve as substantial evidence if there is an indication in the more recent records that there has been a significant change in the claimant's condition." Abubakar v. Astrue, No. 11-cv-10456, 2012 U.S. Dist. LEXIS 37797, at *37 (D. Mass. Mar. 21, 2012).  However, "[a]n ALJ is entitled to rely on older medical records when the newer evidence does not show a significant change in the claimant's condition or limitations." Genereux v. Berryhill, No. 15-cv-13227, 2017 U.S. Dist. LEXIS 49173, at *11 (D. Mass. Mar. 31, 2017) (citing Abubakar, 2012 U.S. Dist. LEXIS, at *37).  This standard also applies to non-treating medical sources when their opinion was issued before new treating source opinions are produced.  See McGowan v. Berryhill, No. 18-cv-12543, 2020 U.S. Dist. LEXIS 48920, at *18 (D. Mass. Mar. 5, 2020) ("[E]ven accepting that [medical experts] did not consider evidence postdating their opinions, it did not matter because the new evidence did not indicate any appreciable change in [Claimant's] symptoms or functional limitations."); Ford v. Berryhill, No. 16-cv-11976, 2017 U.S. Dist. LEXIS 161612, at *30–31 (D. Mass. Sept. 28, 2017) ("[T]he ALJ may rely on older evidence from a non-examining consultant when the information remains accurate and there have been no appreciable changes in the claimant's symptoms or functional limitations in the evidence post-dating the assessment.").

In determining that Claimant was moderately limited in his ability to interact with others, the ALJ relied on the record as a whole, including the April 2017 opinion of Dr. Cohen.  [R. 20; R. 153 (stating that Claimant was moderately limited in his ability to interact appropriately with the public, not significantly limited in his ability to get along with others, and not significantly limited in his ability to maintain socially appropriate behavior)].  This finding was consistent with 2018 opinions from Dr. Orman, Dr. Archer, and Ms. Spagnuolo, who reported that

Claimant was "pleasant," "cooperative," and "appropriately conversant."  [R. 1322, 1330].

Regarding the Claimant's abilities in concentration, persistence, and pace, the ALJ determined

that Claimant has a moderate limitation.  [R. 20].  This was corroborated by Dr. Cohen's report,

which determined that Claimant was moderately limited in his ability to sustain concentration for

extended periods, [R. 153], and evidence in the record from 2018 to the effect that Claimant

reported having trouble concentrating, [R. 1323, 1327, 1333].  The ALJ also determined that

Claimant was moderately limited in his ability to adapt.  [R. 21].  Again, this was consistent with

the opinion of Dr. Cohen, [R. 154], as well as with opinions in the record from 2018, see

[R. 1333].  In the areas of memory and understanding, Dr. Cohen's report stated that Claimant

had no limitations.  [R. 153].  While this was inconsistent with later reports in the record, see

[R. 1327], the ALJ found that Claimant was mildly limited in understanding, remembering and

applying information, [R. 20], thus Dr. Cohen's report was not determinative.[6]

The ALJ permissibly took Dr. Cohen's opinion into account in making his determination

as to Claimant's mental RFC.  See Ford, 2017 U.S. Dist. LEXIS 161612, at *30–31 ("[T]he ALJ

may rely on older evidence from a non-examining consultant when the information

remains accurate and there have been no appreciable changes in the claimant's symptoms or

functional limitations in the evidence post-dating the assessment.").  While Dr. Cohen's opinion

predated more recent reports by Claimant's treating physicians, her conclusions (with one

exception noted above) were consistent with the more recent opinions by treating sources.  See

McGowan, 2020 U.S. Dist. LEXIS 48920, at *18; Ford, 2017 U.S. Dist. LEXIS 161612, at

---

[6] "Plaintiff has no basis for an objection to the RFC assessment crafted by the ALJ when it was
more conservative than the recent RFC assessments of nonexamining reviewing physicians on
which the ALJ was entitled to rely."  Halla v. Colvin, No. 15-cv-30021, 2016 WL 234802, at *7
(D. Mass. Jan. 20, 2016).

*30–31.  The ALJ did not err in relying, in part, on the report of Dr. Cohen as an ALJ may permissibly rely upon older evidence when that information remains accurate.  See Abubakar, 2012 U.S. Dist. LEXIS 37797, at *37.  "Accordingly, there was no reversible error in relying, in part, on the DDS physicians' opinions, which the ALJ found to be supported by other evidence in the record, even though those opinions were issued based on a partially incomplete evidence record."  Genereux, 2017 U.S. Dist. LEXIS 49173, at *12.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, the Court finds that the ALJ's decision was supported by substantial evidence and was consistent with the law.  Claimant's motion to reverse or remand, [ECF No. 14], is therefore DENIED and the Commissioner's motion to affirm, [ECF No. 19], is GRANTED.

**SO ORDERED.**

September 29, 2020                                              /s/ Allison D. Burroughs
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE